1 | Sharon Duggan, CSB #105108
Internet e-mail address foxsduggan@aol.com
2 | 370 Grand Ave., Ste 5
Oakland, CA 94610
3 | Telephone (510) 271-0825
Facsimile (510) 271-0829
4 |      Local Counsel for Plaintiffs

5 | Marianne Dugan, *pro hac vice*
     (Oregon State Bar # 93256)
6 | Internet e-mail address mdugan@mdugan.com
Attorney at Law
7 | 259 E.  5th Ave., Suite 200-D
Eugene, OR 97401
8 | Telephone (541) 338-7072
Facsimile  (866) 650-5213
9 |      Lead Counsel for Plaintiffs

10 |     IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
11 |     SAN FRANCISCO DIVISION

12 | KARUK TRIBE; KLAMATH-SISKIYOU
WILDLANDS CENTER; ENVIRONMENTAL
13 | PROTECTION INFORMATION CENTER; and    CASE NO. CV-10-2039 WHA
KLAMATH FOREST ALLIANCE,
14 |
    Plaintiffs,                    HEARING JUNE 9, 2011, 2:00
15 |
     v.                         PLAINTIFFS' COMBINED REPLY IN
16 |                              SUPPORT OF MOTION FOR SUMMARY
TYRONE KELLEY, in his capacity as Forest    JUDGMENT and RESPONSE TO
17 | Supervisor, Six Rivers National Forest; and    DEFENDANT'S MOTION FOR
UNITED STATES FOREST SERVICE,        SUMMARY JUDGMENT
18 |
    Defendants.
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      CORRECTION OF FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      Plaintiffs Adequately Brought the Issues to the Agency's Attention . . . . . . . . . . . . . 1

        B.      The Project Has Materially Changed Compared to the EIS Analysis . . . . . . . . . . . . 3

II.     THE NHPA CLAIM IS NOT MOOT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Defendant Violated the NHPA and Proper Consultation and Mitigation Must Occur
                Prior to Further Implementation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.      The NHPA Claim is Not Moot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    DEFENDANT MISCHARACTERIZES THE NHPA PROGRAMMATIC
        AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.     THE CLAIM REGARDING FAILURE TO UPDATE THE NHPA ELIGIBILITY
        ANALYSIS STATES A LEGAL CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.      PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE HFRA . . . . . . . . . . . . . . . . . . . . 12

VI.     THE REQUIREMENTS FOR A SUPPLEMENTAL EIS CLAIM ARE MET . . . . . . . . . 13

VII.    THE IMPACTS ARE NOT WITHIN THE SCOPE OF THE PRIOR ANALYSIS . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

## TABLE OF AUTHORITIES

2 **CASES**

3 American Petroleum Inst. v. EPA, 540 F.2d 1023 (10th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . 4

4 Animal Def. Council v. Hodel, 840 F.2d 1432 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 Ass'n of Pacific Fisheries v. EPA, 615 F.2d 794 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 4

6 Atglen-Susquehanna Trail v. Surface Transp. Bd., 252 F.3d 246 (3rd Cir. 2001) . . . . . . . . . . . . . 12

7 Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 103 S. Ct. 2246, 76 L.Ed.2d 437 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8

9 Bennett v. Spear, 117 S. Ct. 1154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Buono v. Norton, 371 F.3d 543 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10

CACI, Inc. v. Stone, 990 F.2d 1233 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11

California v. Block, 690 F.2d 753 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

12

Cantrell v. City of Long Beach, 241 F.3d 674 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

13

City of Carmel-By-The-Sea v. U.S. Dept of Transp, 123 F.3d 1142 (9th Cir. 1997) . . . . . . . . . . . 3

14

City of Santa Clara v. Andrus, 572 F.2d 660 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

15

County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

16

Croman Corp. v. U.S., 31 Fed. Cl. 741 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17

Decker v. USFS, D. Wyo. No. 09-cv-02675-PAB-CBS (Jan. 31, 2011) . . . . . . . . . . . . . . . . . . . 13

18

Friends of the Clearwater v. Dombeck, 222 F.3d 552 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 3

19

Friends of the Earth v. Hall, 693 F. Supp. 904 (W.D. Wash. 1988) . . . . . . . . . . . . . . . . . . . . . . 10

20

Friends of the Earth, Inc. v. Laidlaw Envtl Services, 528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . 7

21

Greater Gila Biodiversity Project v. USFS, 926 F. Supp. 914 (D. Ariz. 1994) . . . . . . . . . . . . . . . 14

22

Klamath Siskiyou Wildlands Center v. Boody, 468 F.3d 549 (9th Cir. 2006) . . . . . . . . . . . . . . . . 14

23

League of Wilderness Defenders v. Marquis-Brong, 259 F. Supp. 2d 1115 (D. Or. 2003) . . . . . . . 8

24

Marbury v. Madison, 5 U.S. 137 (1803) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

25

Marsh v. Or. Natural Res. Council, 490 U.S. 360, 373, 109 S. Ct. 1851 (1989) . . . . . . . . . . . . . . 14

26

Massachusetts v. Watt, 716 F.2d 946 (1st Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

Natural Res. Def. Council v. Southwest Marine, Inc., 236 F.3d 985 (9th Cir. 2000) . . . . . . . . . . 8-9

Natural Resources Defense Council v. USFS, 421 F.3d 797 (9th Cir. 2005) . . . . . . . . . . . . . . . . 15

Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 886 (9th Cir. 2002) . . . . . . . . . . . . . . . . 7-8

Office of Personnel Mgmt v. Richmond, 496 U.S. 414, 110 S. Ct. 2465 (1990) . . . . . . . . . . . . . . 10

Parola v. Weinberger, 848 F.2d 956 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Price Road Neighborhood Ass'n v. U.S. Dep't of Transp., 113 F.3d 1505 (9th Cir. 1997) . . . . . . . 14

Rosemere Neighborhood Assn v. EPA, 581 F.3d 1169 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . 8

Rounds v. USFS, 301 F. Supp. 2d 1287 (D. Wyo. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Save Greers Ferry Lake, Inc. v. Dept of Defense, 255 F.3d 498 (8th Cir. 2001) . . . . . . . . . . . . . . 11

United States v. Amdahl Corp., 786 F.2d 387 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Wildwest Institute v. Bull, 468 F. Supp. 2d 1234 (D. Mont. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 13

Wildwest Institute v. Bull, 472 F.3d 587 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Wildwest Institute v. Bull, 547 F.3d 1162 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**STATUTES**

5 U.S.C. 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16 U.S.C. 6515(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

**REGULATIONS**

36 C.F.R. 218.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

36 C.F.R. 800.4 (c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

36 C.F.R. 800.5(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

36 C.F.R. 800.8(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

36 C.F.R. 800.9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

36 C.F.R. 800.9(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1

40 C.F.R. 1502.9(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1  **INTRODUCTION**

2      Defendant states that plaintiffs were "satisfied" with the project and implies they

3  unreasonably are now "unhappy" with it.  See Def's Br. at 1, 16, 30.  Plaintiffs were not "satisfied";

4  in the "Resolution" Agreement with defendant they withdrew their objections in reliance on

5  defendant's promises to include in the OCFR project certain safeguards to protect the environment

6  and cultural resources.  AR Tab 599 at 5023 ("[T]he Resolution Agreement does not address all of

7  our objections concerning canopy and large trees, and . . . we continue to believe that the failure to

8  address the critical aspects of the project runs contrary to both the spirit and intent of HFRA").

9      More importantly, contrary to defendant's assertions in its brief at page 12, plaintiff is not

10  bringing claims based on pre-ROD NHPA or NEPA compliance.  Plaintiffs' claims are based on new

11  information.  Defendant's implementation of the project to date has differed drastically from the

12  project as proposed in the EIS.  Under the HFRA, the court has the power to review issues that were

13  not raised in the objection/resolution process, "where significant new information bearing on a

14  specific claim only becomes available after conclusion of the administrative review."  36 C.F.R.

15  218.14.  The court also has the authority to review plaintiffs' claim that the implementation of the

16  project has significantly changed the nature of the project such that a supplemental EIS is required.

17  **I.    CORRECTION OF FACTUAL BACKGROUND**

18      **A.    Plaintiffs Adequately Brought the Issues to the Agency's Attention**

19      Defendant implies plaintiffs did not present concerns in a timely manner.  First, as discussed

20  *infra*, because the problems came to light after implementation began, it was impossible for

21  plaintiffs to raise these implementation issues.  However, during the years of pre-decision

22  collaboration, plaintiffs repeatedly presented their concerns about what could happen, in great detail:

23      **Cultural values** – AR Tab 37 at 15; Tab 58 at 3 #5; Tab 159; Tab 165 at 8; Tab 196 at 1 and
        13; Tab 159 at 5; Tab 162 at 1, 6, 9, 10, 19, 20, 21, 26; Tab 163 at 2, 3

24

25      **Concerns About Repeating Problems from Past Projects (Hazel Thin sale, etc.)** – Tab
        37; Tab 196 at 7; Tab 197 at 14; Tab 162 at 11, 25

26

**Purpose and Need –** Tab 31 at 3; Tab 37 at 1; Tab 197 at 1; Tab 162 at 15; Tab 16 at 1.

**Failure to Collaborate –** Tab 31 at 1; Tab 37 at 13; Tab 105 at 1 para. 3; Tab 175 at 2-3; Tab 159 at 2; Tab 162 at 3, 5, 12, 16, 24; Tab 163 at 2

**Fire Hazard –** Tab 40; Tab 87 at 3; Tab 162 at 19

**Corridor Width –** Tab 87 at 5; Tab 196 at 10

**Landings –** Tab 103 at 2; Tab 104 at 2; Tab 196 at 4; Tab 197 at 4; Tab 162 at 5

**Monitoring –** Tab 95 at 2; Tab 162 at 12; Tab 163, last page

Defendant implies that only "[s]hortly before Timber Products started implementing the Project, the Karuk raised concerns that using the yarders and their associated guy trees would cause damage to trees near the spiritual trail. AR 4784." Def's Br. at 7. But three years <u>before</u> implementation, meeting notes state: "Units 1 and 2 - Tribes do not want to see disturbance near trail; Back guy would be too close to trail." Tab 212, AR 1705. Defendant noted in a letter:

> **In the early phase of implementation** of OCFR the Karuk Tribe and the Orleans collaborative group brought to our attention concerns regarding the implementation of the project such as impact to the a [sic] spiritual trail, hardwood retention. We have been working collaboratively with the Tribe and community to address the implementation issues.

Tab 599, AR 5006 (emph. added).

Defendant also implies it was somehow lured into violating the NHPA by the Tribe – apparently some sort of estoppel argument. <u>See, e.g.</u>, Def's Br. at 9.[1] It is the government's job to comply with the NHPA. The government has lawyers and advisors to ensure it understands and

---

[1] For example, defendant states the Tribe "expressed willingness to accept strapping of guy trees." Def's Br. at 9. Units 1 and 2 had been <u>partially</u> logged by the time this discussion took place and harm to the cultural resources had already occurred. The parties met to discuss how to resolve the immediate situation. Defendant noted that the Tribal representatives

> were unhappy about the break down of the collaborative process with respect to units 1 and 2 and the lack of protection for the medicine man trail, however they also did not want to see any project logs left remaining on the ground in units 1 and 2 and were willing to work something out providing that the new measures be adhered to during implementation.

Tab 524; AR 4893. The Tribe reiterated that "they are o.k. with the harvesting **as long as the Yarder doesn't need to use trees as guy trees on or near the trail.**" Tab 524; AR 4893-94.

1  complies with the law.  Even if a tribal member erroneously told the government an action was legal

2  (which is not true), that would not excuse defendant from complying with the law.  As the Ninth

3  Circuit explained in a NEPA case:

> [The government] contend[s] that Carmel fails to meet its burden of proof to show what other projects the Final Environmental Impact Statement/Report failed to consider.  But the Federal Highway Administration and Caltrans failed first; they did not properly describe other area projects or detail the cumulative impacts of these projects.
>
> The Federal Highway Administration and Caltrans bear this burden under the National Environmental Protection Act.  <u>See</u> <u>City of Davis [v. Coleman</u>, 521 F.2d 661 (9th Cir. 1975)], 521 F.2d at 671 ("Compliance with [the National Environmental Protection Act] is a primary duty of every federal agency; fulfillment of this vital responsibility should not depend on the vigilance and limited resources of environmental plaintiffs.")

<u>City of Carmel-By-The-Sea v. U.S. Dept of Transp</u>, 123 F.3d 1142, 1161 (9th Cir. 1997).  An

agency cannot simply rely on environmental groups to bring new information to the attention of the

government agency, whose responsibility it is to be aware of the environmental impact of its actions.

<u>Friends of the Clearwater v. Dombeck</u>, 222 F.3d 552, 559 (9th Cir. 2000).

**B.      The Project Has Materially Changed Compared to the EIS Analysis**

Defendant insists nothing in the project has changed <u>materially</u>, because the analysis was

broad enough to encompass the changes that have occurred.

For example, defendant asserts "the FEIS leaves flexibility on [sic] the types of equipment to

use depending on the location."  Def's Br. at 8 n. 3.  But the passage cited for that proposition states

that areas with "spiritual values" <u>will</u> have "unconventional logging techniques . . . such as horses,

mini-yarders, multi-span skyline, grapple yarding or quad-runner with winch and/or arch."  AR 864.

Defendant implies that the impacts to the Tribe's traditional cultural properties were

"inadvertent" and minor.  The plain meaning of the word "inadvertent" does not apply to something

as blatant as parking heavy machinery on a spiritual trail that defendant knew is used regularly by

the Karuk Tribe -- as one example.  Defendant explicitly promised the trail would be protected.  Tab

269, AR 2072; Tab 333, AR 4213.  If defendant chose not to explain this to the contractor, that is not

inadvertent – it is grossly negligent, reckless, or intentional.  If defendant explained this to the

1    contractor, the contractor's actions are not inadvertent.

2           And the impacts were not minor. As the SHPO recently found, "the effects to the historic

3    property were extensive and wide spread." Ex. B (attached) at 1.[2] Defendant has an "inability to

4    mitigate" these impacts. Id. To make matters worse, no heritage reports were prepared for 2009 or

5    2010, and no archaeologist was on staff during at least part of that time. Ex. A (attached).

6    Defendant asserts only seven trees were "inadvertently" logged and five trees harmed. Numerous

7    large "add-on" trees were logged (see, e.g., Decl. of Baker, filed today); and the logging was not the

8    only impact to the cultural areas. Op. Br. at 8-9. To date defendant's response has been inadequate.

9    Op. Br. at 14-17; Ex. B at 1 (SHPO states "little is offered to mitigate the adverse effect").

10          Defendant insists (at 25) the skyline corridors did not exceed the ten-foot width analyzed in

11   the EIS. A tribal member went on-site and found 20- to 30-foot-wide corridors. AR 5406; Op. Br.

12   at 18. The AR page cited by defendant discusses how wide the corridors were marked in November

13   2009 – not as they were actually logged, as observed the next month. Compare AR 4866 with AR

14   5406. The validity of the tribal member's report is confirmed by photos taken by a member of

15   Klamath Forest Alliance, showing corridors up to 105 feet wide. Baker Decl, Attachment.[3]

16          Defendant asserts logging of hardwoods was contemplated. The project purposes included

17

18           [2] Because plaintiffs' claims are about what happened after the decision, it is appropriate
     for the court to review these post-decision exhibits.

19           [P]ost decision studies can be deemed a clarification or an explanation of the original
               information before the Agency, and for this purpose it is proper for us to consider them . .
20             . . If the post decisional studies showed that the Agency proceeded upon assumptions that
               were entirely fictional or utterly without scientific support, then post decisional data
21             might be utilized by the party challenging the regulation.

22   Ass'n of Pacific Fisheries v. EPA, 615 F.2d 794, 811 (9th Cir. 1980). "After promulgation,
     events indicating the truth or falsity of agency predictions should not be ignored." American
23   Petroleum Inst. v. EPA, 540 F.2d 1023, 1034 (10th Cir. 1976).

24           [3] Defendant also asserts landing sizes have been corrected in the modified contract. See
     Def's Br. at 26; Op. Br. at 18. The fact that defendant did not make this correction until plaintiffs
25   filed suit demonstrates a pattern of ignoring such protections. To plaintiffs' knowledge only
     three of the more than 100 units have been logged; for this pattern to be evident at the outset
26   does not bode well for the remainder of the project.

1    protecting hardwoods.  Tab 141, AR 668 ("The desired future condition is to . . .  Maintain a healthy

2    hardwood component well into the future average percent of total basal area in hardwoods").

3    Defendant acknowledged in a December 2009 letter to the Tribe:

> In the early phase of implementation of OCFR the Karuk Tribe and the Orleans collaborative
> group brought to our attention concerns regarding the implementation of the project such as
> impact to the a [sic] spiritual trail, **hardwood retention**.  We have been working
> collaboratively with the Tribe and community to address the implementation issues.

Tab 599, AR 5006 (emph. added).  Accordingly, after plaintiffs complained about the initial units,

defendant "[a]greed to leave any felled hardwoods for community firewood gathering."  But

defendant left in the contract the financial incentive for removing hardwoods.  Op. Br. at 19.

        Defendant asserts that unmerchantable material (YUM) was left on site only to protect

cultural sites.  Def's Br. at 27.  The EIS stated that YUM would be removed, for one of the core

purposes of the project – reducing fire danger.  If defendant now believes removing YUM would

harm cultural sites, the environmental costs and benefits of leaving the YUM need to be analyzed in

an SEIS because a central assumption of the EIS was not valid.[4]

        Defendant states wildlife surveys were completed, pointing to AR 5812 and 5814.  But for

the goshawk, only one year of survey results are in the record (AR 5814), and for spotted owl, only

two years (AR 5812).  The most recent was in 2008, and it is now three years later – with up to ten

years left of implementation of the project.  Tab 141, AR 676, 679.  And those surveys are

inadequate because there is no explanation of where they took place in relation to the project units.

        To summarize from the opening brief, the as-implemented impacts which were not analyzed

in the EIS include damage to cultural areas; unanalyzed equipment use; wider corridors; larger

landings; financial incentive for removing hardwoods; use of guy trees in unanticipated areas; failure

to yard unmerchantable material; and additional "add-on" trees (including older, fire-resistant trees).

One USFS staffer noted that "[t]he units have morphed and changed so much that the maps on the

_____

        [4]  Defendant attempts to minimize the YUM issue by stating only 70 pieces were left.
First, <u>over</u> 70 pieces of YUM were left.  Tab 421.  Second, this result is after only three of the
more than 100 units being logged – and <u>each</u> unit had unremoved YUM.

1    back of the cards are not very good.  The unit boundaries seemed to be different on the new map

2    then the stand record cards show them currently to be."  Tab 605, AR 5035.

3    **II.     THE NHPA CLAIM IS NOT MOOT**

4          Defendant incorrectly asserts that the NHPA is entirely procedural and "does not dictate

5    particular outcomes."  Def's Br. at 20-21.  NHPA requires the agency to determine whether the

6    effect of an undertaking will be adverse, and <u>avoid or mitigate any adverse effects</u>.  36 C.F.R.

7    800.5(c), 800.8(e), 800.9(b), 800.9(c).  Defendant also incorrectly implies that plaintiffs' claim is

8    moot because defendant promises to comply with the NHPA in the future.

9          **A.     Defendant Violated the NHPA and Proper Consultation and Mitigation Must**
              **Occur Prior to Further Implementation**

10

11         It is indisputable at this point that defendant violated the NHPA and that the violation

12   harmed the Tribe's traditional cultural properties.  <u>See</u> Ex. B; Op. Br. at 8-9, 14-17.  This is not a

13   matter of demonstrating that the agency's discretionary decision-making was arbitrary and

14   capricious; but rather the agency clearly did not follow <u>procedure</u>.  Ex. B; Op. Br. at 8-9, 14-17.  In

15   addition to "arbitrary and capricious" review (5 U.S.C. 706(2)(A)), the court must "hold unlawful

16   and set aside agency action, findings, and conclusions found to be . . . <u>without observance of</u>

17   <u>procedure</u> required by law."  <u>Id</u>. 706(2)(D) (emph. added).

18         This claim does not require the Court to review technical data or to defer to the agency's

19   expertise.  The agency did not confer with the SHPO and take other steps required by the NHPA,

20   and harm to the cultural resources ensued; there is no dispute about technical matters.  Ex. B; Op.

21   Br. at 8-9, 14-17.  Furthermore, the SHPO, not the USFS, is the expert.  If any deference to expertise

22   is called for, it is to the SHPO's findings that defendant violated the NHPA.  <u>Bennett v. Spear</u>, 117 S.

23   Ct. 1154, 1164 (1997) (the "species and habitat investigations [under the ESA] are not within the

24   action agency's expertise"); <u>Parola v. Weinberger</u>, 848 F.2d 956, 959 (9th Cir. 1987).

25         **B.     The NHPA Claim is Not Moot**

26         Rather than seriously arguing no NHPA violation occurred, defendant now appears to argue

PAGE 6 - PLFS' RESPONSE/REPLY ON SUMMARY JUDGMENT - CV-10-2039 WHA

the NHPA claim is moot because it has (allegedly) changed its ways and promises to be better in the future.  That does not moot the claim.  "The burden of demonstrating mootness is a heavy one."  County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979).  "In deciding a mootness issue, 'the question is not whether the precise relief sought at the time the application for an injunction was filed is still available.  The question is whether there can be any effective relief."  Cantrell v. City of Long Beach, 241 F.3d 674, 678 (9th Cir. 2001).

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  If it did, the courts would be compelled to leave the defendant free to return to his old ways."  Friends of the Earth, Inc. v. Laidlaw Envtl Services, 528 U.S. 167, 189 (2000) (internal citations omitted).  "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to occur."  Id. at 190.

Thus, in Neighbors of Cuddy Mountain v. Alexander, 303 F.3d 886 (9th Cir. 2002), the Ninth Circuit held that a challenge to a logging project was not moot, even though the logging was completed by the time the case reached the Ninth Circuit.  The court explained that it could order mitigation measures to remedy the harm, and provided a thorough review of the applicable case law:

> Defendants assert that Neighbors' challenge to the Grade/Dukes sale is moot because logging is complete.  A case becomes moot when it "'los[es] its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'" . . .

> One might assume that defendants must be correct, for the logging at issue has been completed.  Our cases, however, make clear that completion of activity is not the hallmark of mootness.  Rather, a case is moot only where no effective relief for the alleged violation can be given. . . .

> . . . [W]e decline to hold the dispute moot simply because the violation (if any) has already occurred. . . . Although of course the logged trees cannot be brought back, the court below might order other measures to help mitigate the damage caused by the sale.  For instance, it could order the Forest Service to study the sale's impacts on species viability, and, if necessary, to mitigate those impacts in both the area of the sale and elsewhere in the forest.  If warranted, it might order the Forest Service to adjust future timber plans to compensate for

1    this allegedly unlawful one. . . . Or, the remedy could take the form of a more direct species
     population intervention, such as monitoring the birds' population trends and developing, if
2    necessary, artificial habitats for their recovery.  Because "effective relief may still be
     available to counteract the effects of the violation, the controversy remains live and present."
3
     303 F.3d at 1065-66 (footnote and citations omitted).  See also League of Wilderness Defenders v.
4
     Marquis-Brong, 259 F. Supp. 2d 1115 (D. Or. 2003) (voluntary withdrawal of timber sale did not
5
     moot the case); Rosemere Neighborhood Assn v. EPA, 581 F.3d 1169 (9th Cir. 2009) (pattern of
6
     delay and noncompliance; announcing a plan for improvement is insufficient).
7
              In Cantrell, the plaintiffs challenged a plan to develop a former naval station.  By the time
8
     the case reached the Ninth Circuit, several historic buildings and bird habitats had been razed under
9
     the plan.  Although the destruction of the buildings could not be reversed, the court held that
10
              [n]evertheless, if required to undertake additional environmental review, the defendants
11            could consider alternatives to the current reuse plan, and develop ways to mitigate the
              damage to the birds' habitat by, for example, creating new nesting and foraging areas on the
12            land that was formerly the station or utilizing other nearby land for mitigation purposes.
              Since effective relief may still be available, the demolition of the [buildings] was insufficient
13            to render the case moot.

14   241 F.3d at 678-79.

15            In another case, the plaintiffs alleged that a cross on public land was illegal.  Defendants

16   argued the case was moot because the land was to be transferred.  The Ninth Circuit disagreed:

17              Even if the transfer were already completed, defendants have not carried their burden
              of showing that "(1) subsequent events [have] made it absolutely clear that the allegedly
18            wrongful behavior [cannot] reasonably be expected to recur, and (2) interim relief or events
              have completely and irrevocably eradicated the effects of the alleged violation." . . . "'Mere
19            voluntary cessation of allegedly illegal conduct does not moot a case.'"

20   Buono v. Norton, 371 F.3d 543, 545 (9th Cir. 2004) (citations omitted).

21            Defendant has promised to "remedy those effects as soon as possible" (Def's Br. at 21) and

22   discusses mitigation measures in its brief at 22-23.  But it has been almost a year since defendant

23   made that promise.  See AR 5624-25.[5]  The court has "broad latitude in fashioning equitable relief

24   when necessary to remedy an established wrong."  Natural Res. Def. Council v. Southwest Marine,

25   _____

26            [5]  In that 2010 promise, defendant made the odd and unsupported statement that this
     litigation "may delay implementation" of the mitigation measures.  AR 5624.

1    Inc., 236 F.3d 985, 999 (9th Cir. 2000). The court can order these mitigation measures be

2    implemented; and many other potential remedies exist – for example, requiring the government to

3    provide unit details to plaintiffs in advance of logging; enjoining the project until a memorandum of

4    agreement is developed between defendant and plaintiffs about mitigating the damage; and ensuring

5    that certain provisions are incorporated into all contracts for the project. If the Court rules in

6    plaintiffs' favor on the merits, it would be appropriate to allow briefing on remedies.

7    **III.    DEFENDANT MISCHARACTERIZES THE NHPA PROGRAMMATIC**
     **AGREEMENT**

8
          Defendant mischaracterizes the scope of the Programmatic Agreement (PA) as covering

9
     traditional cultural properties – despite having recently withdrawing it as a tool for protection of
10
     such properties. Defendant states that "[b]ecause it was following the procedures in the Regional
11
     PA, the Forest Service complied with the NHPA without consulting with the SHPO." Def's Br. at 9
12
     n. 4. But defendant's own summary of "Findings from Program Review with SHPO" states:
13
     "Findings and Recommendations: 1.) There was a **fatal flaw** in the Programmatic Agreement (not
14
     just Six Rivers, but all Forests): **use of PA approach isn't appropriate where Traditional**
15
     **Cultural Properties are involved**. The SHPO will be notifying the Regional Forester who will
16
     provide new direction to Forests." Tab 717, AR 5394 (emph. added). Thus, it is untrue that
17
     defendant's decision to stop using the PA for cultural properties was unnecessary and voluntary.[6]
18
          Defendant appears to argue that an agency's policies do not violate the law unless and until
19
     another agency says so; and that the courts have no authority to weigh in on this issue. This
20
     astonishing proposition attempts to remove the judiciary from the process of declaring whether
21
     agency action complies with the law; as well as to give agencies a "free pass" for past violations of
22
     the law. Perhaps it is too obvious to cite Marbury v. Madison, 5 U.S. 137, 177 (1803), in which the
23
     Supreme Court first set forth the proposition that "[i]t is emphatically the province and duty of the
24

25        [6] Defendant notes that certain procedural provisions of the PA have been invoked. See
     Def's Br. at 18-19. That does not mean that the PA was designed to substantively protect
26    cultural properties as well as archaeological and historical properties – which it was not.

PAGE 9 - PLFS' RESPONSE/REPLY ON SUMMARY JUDGMENT - CV-10-2039 WHA

1    judicial department to say what the law is."

2          Defendant's authority to offer timber sales is conditioned upon compliance with the

3    applicable laws.  Generally, the failure of an agency or its contracting agent to comply with

4    statutory, regulatory, or other legal requirements renders an offer invalid.  The violation of the

5    NHPA voids the authority for this project.

6          [Government] sales are void if unlawful, for administrative actions taken in violation of
           statutory authorization or requirement are of no effect.  Utah Power & Light Co. v. United
7          States, 1917, 243 U.S. 389, 410, 37 S. Ct. 387, 61 L.Ed. 791; Federal Crop Insurance Corp.
           v. Merrill, 1947, 332 U.S. 380, 384, 68 S. Ct. 1, 92 L.Ed. 10; Federal Maritime Comm'n v.
8          Anglo-Canadian Shipping Co., 9 Cir., 1964, 335 F.2d 255, 258.

9    City of Santa Clara v. Andrus, 572 F.2d 660, 677 (9th Cir. 1978), cert. den., 439 U.S. 859 (1978)

10    (government's sales of electricity void because they violated reclamation laws).

11          A contract that violates statute or regulation is void even if the agency was unaware of the

12    violation at the time.  "A contractor who enters into an arrangement with an agent of the government

13    bears the risk that the agent is acting outside the bounds of his authority, even when the agent

14    himself was unaware of the limitations on his authority."  CACI, Inc. v. Stone, 990 F.2d 1233, 1236

15    (Fed. Cir. 1993).  A federal agency is empowered to act only within the statutory guidelines

16    establishing its power and any action exceeding its statutory authority is void.  Office of Personnel

17    Mgmt v. Richmond, 496 U.S. 414, 424, 110 S. Ct. 2465, 2471 (1990).

18          To enforce a government contract that violates the law "would be to nullify those very

19    statutes, regulations, and determinations -- a result clearly contrary to the public interest."  United

20    States v. Amdahl Corp., 786 F.2d 387, 392 (Fed. Cir. 1986). "Compliance with the applicable

21    regulations is required in order to form a valid contract."  Croman Corp. v. U.S., 31 Fed. Cl. 741,

22    748 (1994) (voiding a timber sale).

23          The illegality need not stem from the statute authorizing the agency to enter into contracts; a

24    contract is also void if the agency fails to meet conditions placed on that authority.  In Friends of the

25    Earth v. Hall, the court held that because the Army Corps relied on an inadequate EIS in issuing a

26

1   Clean Water Act permit, the permit was void and "no permit exists."  693 F. Supp. 904, 914-15

2   (W.D. Wash. 1988).  See Save Greers Ferry Lake, Inc. v. Dept of Defense, 255 F.3d 498, 501 (8th

3   Cir. 2001) (permit based on faulty NEPA "may not be recognized or enforced as a matter of law.").

4          To explain the significance of the problem with defendant's reliance on the PA, it helps to

5   review the PA itself.  It was clearly designed to protect only archaeological and historical sites – not

6   cultural areas which are used to this day by the Karuk Tribe.  For example, as defendant notes at

7   pages 5 and 17 of its brief, the PA defines an historic property as "any **prehistoric or historic**

8   district, site, building, structure, or object, and its associated artifacts, remains, features, settings, and

9   records, that is either listed in or has been determined eligible for inclusion in the [National Register

10  of Historic Places]."  AR 5494 (emph. added).  Defendant then incorrectly states:  "Thus, under the

11  terms of the Regional PA and the NHPA, the Regional PA may be used in cases where projects

12  contain Traditional Cultural Properties."  Def's Br. at 17.  Defendant continues to misunderstand that

13  the Spiritual Trail and similar sites are not simply "historic" or "prehistoric" but are living sites that

14  continue to be used by the Tribe.  This might also explain why no heritage reports were prepared for

15  2009 or 2010, and no archaeologist was on staff.  Ex. A.

16  **IV.    THE CLAIM REGARDING FAILURE TO UPDATE THE NHPA ELIGIBILITY
        ANALYSIS STATES A LEGAL CLAIM**

17

18         Defendant insists that it has no duty to update the information regarding the protected,

    NHPA-eligible area.  Def's Br. at 23.  To the contrary, defendant has an enforceable duty to update

19
    its analysis of the eligible area before it implements an "undertaking."  36 C.F.R.  800.4 (c)(1) states:

20
                 In consultation with the SHPO/THPO and any Indian tribe or Native Hawaiian
21       organization that attaches religious and cultural significance to identified properties and
         guided by the Secretary's standards and guidelines for evaluation, the agency official **shall**
22       apply the National Register criteria (36 C.F.R. part 63) to properties identified **within the
         area of potential effects** that **have not been previously evaluated** for National Register
23       eligibility.  The passage of time, changing perceptions of significance, or incomplete prior
         evaluations **may** require the agency official to reevaluate properties previously determined
24       eligible or ineligible.  The agency official shall acknowledge that Indian tribes and Native
         Hawaiian organizations possess special expertise in assessing the eligibility of historic
25       properties that may possess religious and cultural significance to them.

26

1    36 C.F.R. 800.4(c)(1) (emph. added).  In its brief the government chooses to focus on the word

2    "may," conveniently ignoring the initial section of the regulation which uses the word "shall."

3         There is very little case law interpreting this regulation.  Indeed, plaintiffs' counsel has found

4    only one case which interprets this language (rather than finding factually that the government had

5    updated its evaluation).  In <u>Atglen-Susquehanna Trail v. Surface Transp. Bd.</u>, 252 F.3d 246, 264

6    (3rd Cir. 2001), the court held that it was arbitrary and capricious for a government agency to refuse

7    to consider expanding an area protected by the NHPA when presented with evidence indicating such

8    expansion might be warranted.  The agency stated the submission of the new information was

9    "untimely"; the court disagreed:  "If the passage of time can be a basis for reevaluation of the

10   identification decision under the regulations, it cannot at the same time be a basis for refusing to

11   consider evidence of changed perceptions of historical significance."  <u>Id</u>.

12        Despite the paucity of case law, the regulation is clear, and updating is required.

13   **V.     PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE HFRA**

14        Defendant argues that plaintiffs' claims are barred by the Healthy Forests Restoration Act

15   (HFRA) because it places limits on judicial review of HFRA projects.  Def's Br. at 15-16.  Plaintiffs'

16   claims are not based upon problems identified during the administrative process – rather, they are

17   based upon substantive violations of the NHPA and NEPA during <u>implementation</u> of the project.

18        The HFRA regulations provide, in relevant, part, as follows:

19        The objection process set forth in this subpart fully implements Congress' design for a
         predecisional administrative review process for proposed hazardous fuel reduction projects
20        authorized by the HFRA. . . . [J]udicial review of hazardous fuel reduction projects that are
         subject to these procedures is strictly limited to those issues raised by the plaintiff's
21        submission during the objection process, **except** in exceptional circumstances such as where
         **significant new information bearing on a specific claim only becomes available after**
22        **conclusion of the administrative review.**

23   36 C.F.R. 218.14 (emph. added).  This regulation implements the HFRA statute which provides:

24   "An exception to the requirement of exhausting the administrative review process before seeking

25   judicial review shall be available if a Federal court finds that the futility or inadequacy exception

26
     PAGE 12 - PLFS' RESPONSE/REPLY ON SUMMARY JUDGMENT - CV-10-2039 WHA

1    applies to a specific plaintiff or claim." 16 U.S.C. 6515(c)(3)(A).[7]

2        Plaintiffs' claims are based upon the significant new information which has emerged,

3    demonstrating that the <u>implementation</u> of the project has not been in accordance with the ROD and

4    FEIS. Defendant seems to argue that plaintiffs should have raised in their HFRA objections the

5    arguments about the NHPA violations and the need for a supplemental EIS. But none of those

6    problems came to light until after the HFRA objection/resolution process.

7        The government could have advised the plaintiffs it intended not to incorporate into the

8    contract the safeguards in the EIS which were developed over the years through the collaboration

9    process. The HFRA statutes provide that "[i]f an agency fails or is unable to make information

10    timely available during the administrative review process, a court should evaluate whether the

11    administrative review process was inadequate for claims or issues to which the information is

12    material." 16 U.S.C. 6515(c)(3)(B). Defendant – not plaintiffs – was in possession of the

13    information about how it wording its contracts, yet did not give plaintiffs a heads-up so they could

14    incorporate those issues into their HFRA objections.

15    **VI.    THE REQUIREMENTS FOR A SUPPLEMENTAL EIS CLAIM ARE MET**

16        The "significant new information" standard set forth in the HFRA (allowing plaintiffs to

17    present arguments and information which were not available to them during the HFRA

18    objection/resolution process) is similar to the standard for a supplemental EIS under NEPA. A

19    supplemental EIS is required whenever

20            (i) The agency makes substantial changes in the proposed action that are relevant to
        environmental concerns; or

21

22            (ii) There are significant new circumstances or information relevant to environmental
        concerns and bearing on the proposed action or its impacts.

23    _____

24       [7] Plaintiffs' counsel has searched nationwide for case law interpreting this regulation and
statute, and there simply is none – indeed, there are only three cases (generating five opinions)
plaintiffs' counsel was able to locate which even discuss the HFRA – <u>Wildwest Institute v. Bull</u>,

25    468 F. Supp. 2d 1234 (D. Mont. 2006); <u>Wildwest Institute v. Bull</u>, 472 F.3d 587 (9th Cir. 2006);
<u>Wildwest Institute v. Bull</u>, 547 F.3d 1162 (9th Cir. 2008); <u>Rounds v. USFS</u>, 301 F. Supp. 2d

26    1287 (D. Wyo. 2004); <u>Decker v. USFS</u>, D. Wyo. No. 09-cv-02675-PAB-CBS (Jan. 31, 2011).

1  40 C.F.R. 1502.9(c)(1).

2  The Ninth Circuit has explained:  "Where the information in the initial EIS was so

3  incomplete or misleading that the decisionmaker and the public could not make an informed

4  comparison of the alternatives, revision of an EIS may be necessary to provide a reasonable, good

5  faith, and objective presentation of the subjects required by NEPA."  Animal Def. Council v. Hodel,

6  840 F.2d 1432, 1439 (9th Cir. 1988), amended by 867 F.2d 1244 (9th Cir. 1989).

7  Thus, in Klamath Siskiyou Wildlands Center v. Boody, 468 F.3d 549 (9th Cir. 2006), the

8  court held that a supplemental EIS was required where Resource Management Plans were *de facto*

9  amended by BLM's "Annual Species Reviews" regarding the red tree vole.  The court rejected an

10  argument similar to the one the government makes in the instant case:

11    BLM argues that changes in agency policy do not always require NEPA analysis.
   This is correct.  The Supreme Court opined in Marsh [v. Or. Natural Res. Council] that "an
12  agency need not supplement an EIS every time new information comes to light after the EIS
   is finalized."  490 U.S. [360], 373, 109 S. Ct. 1851 (1989)].  However, NEPA requires an
13  agency to take a "hard look" at potential environmental consequences before taking action,
   Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 97, 103 S. Ct.
14  2246, 76 L.Ed.2d 437 (1983), and if the proposed action might significantly affect the quality
   of the environment, a supplemental EIS is required.  Marsh, 490 U.S. at 374, 109 S. Ct.
15  1851; Price Road Neighborhood Ass'n v. U.S. Dep't of Transp., 113 F.3d 1505, 1509 (9th
   Cir. 1997).

16  468 F.3d at 560.  In Natural Resources Defense Council v. USFS, 421 F.3d 797 (9th Cir. 2005), the

17  court held a supplemental EIS was required because the economic information in the EIS for the

18  Tongass Forest Land Management Plan inflated the economic benefits and discounted the

19  environmental impacts of the Plan.  Thus, the court held that the Forest Service "violated NEPA's

20  procedural requirement to present complete and accurate information to decision makers and to the

21  public to allow an informed comparison of the alternatives considered in the EIS."  421 F.3d at 813.

22  See also Greater Gila Biodiversity Project v. USFS, 926 F. Supp. 914 (D. Ariz. 1994) (five-fold

23  increase in timber volume from EA to contract requires new EA); California v. Block, 690 F.2d 753

24  (9th Cir. 1982) (final action was combination of alternatives in EIS, new EIS had to be circulated);

25  Massachusetts v. Watt, 716 F.2d 946 (1st Cir. 1983) (after government prepared final EIS, it

26

1  radically revised estimates of oil likely to be found on tracts to be leased; SEIS required).

2      As in these cases, the reality of the OCFR project is materially different from the project as

3  described in the EIS and ROS.  An SEIS is required.

4  **VII.    THE IMPACTS ARE NOT WITHIN THE SCOPE OF THE PRIOR ANALYSIS**

5      Defendant asserts that the "inadvertent" impacts to the cultural resources and the

6  environment are within the scope of what was analyzed and therefore a supplemental EIS is not

7  required.  Def's Br. at 24 *et seq*.  Defendant is incorrect.

8      The instant case is similar to <u>California v. Block</u>, in which the court rejected the Forest

9  Service's argument that an SEIS was not required even though it had never circulated the final

10  proposed action to the public for notice and comment.  As here, the government argued the EIS

11  sufficiently analyzed the final proposed action because the proposed action was made up of elements

12  of the previously considered alternatives.  "By refusing to disclose its Proposed Action until after all

13  opportunity for comment has passed, an agency insulates its decision-making process from public

14  scrutiny.  Such a result renders NEPA's procedures meaningless."  690 F.2d at 771.

15      In particular, defendant asserts that the EIS acknowledged that the removal of fuels material

16  "would have both a positive direct effect and a negative indirect effect" on cultural resources.  Def's

17  Br. at 29.  Such vague, conclusory analysis certainly does not meet the <u>California</u> requirement that

18  the <u>specific</u> outline of the project be described to the public and that all impacts be addressed.

19  **CONCLUSION**

20      Based on this brief, plaintiffs' opening brief, the attached exhibits, and the Administrative

21  Record, plaintiffs respectfully request that the Court grant plaintiffs summary judgment and allow a

22  round of briefing regarding appropriate remedies.

23      DATED April 23, 2011.

24      ___/s/  Marianne Dugan_____
        Marianne Dugan, *pro hac vice*

25      (Oregon State Bar no. 93256)
        Lead Attorney for Plaintiffs

26

1

2                          /s/ Sharon Duggan
                         Sharon Duggan, CSB #105108
3                        Local Counsel for Plaintiffs

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26