IGNACIA S. MORENO
Assistant Attorney General
JARED S. PETTINATO, MT Bar No. 7434
SAMANTHA KLEIN FRANK, NY Bar No. SK-9874
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0203
Tel: (202) 305-0474
Fax: (202) 353-0274
Jared.Pettinato@usdoj.gov
Samantha.Frank@usdoj.gov
*Attorneys for the Federal Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| KARUK TRIBE,<br>KLAMATH-SISKIYOU WILDLANDS<br>CENTER,<br>ENVIRONMENTAL PROTECTION<br>INFORMATION CENTER, and<br>KLAMATH FOREST ALLIANCE,<br><br>    Plaintiffs,<br><br>    v.<br><br>TYRONE KELLEY, in his capacity<br>as Forest Supervisor, Six Rivers<br>National Forest, and<br>THE UNITED STATES FOREST<br>SERVICE,<br><br>    Defendants. | No. 3:10-cv-2039-WHA<br><br>Judge William H. Alsup<br><br><br><br>**DEFENDANTS' REPLY BRIEF IN<br>SUPPORT OF THEIR CROSS-MOTION<br>FOR SUMMARY JUDGMENT** |

1

# **TABLE OF CONTENTS**

2  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4  I.    Plaintiffs waived their pre-ROD issues when Plaintiffs did not make those comments
         during the review process, they failed to exhaust those issues in their HFRA objection, and
5        they abandoned their administrative remedies when they withdrew their objection. . . . . . 2

6        A.    Plaintiffs waived these three claims by not raising them in their comments. . . . . . 3

7        B.    Plaintiff failed to exhaust these three claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8        C.    Plaintiffs abandoned their claims by withdrawing their objection. . . . . . . . . . . . . 5

9  II.   The Forest Service Complied with Requirements of the NHPA. . . . . . . . . . . . . . . . . . . . . 6

10       A.    The Forest Service complied with the NHPA by utilizing the Regional PA. . . . . . 7

11       B.    The Forest Service was not required to update the Determination of Eligibility for
12             the Panamnik District prior to approving the Project. . . . . . . . . . . . . . . . . . . . . . . . 10

13 III.  Plaintiffs have not identified any new information that required the Forest Service to
         develop a supplemental EIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14 CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

CASES

*Bastek v. Fed. Crop Ins. Corp.*,
  145 F.3d 90 (2nd Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bus. and Residents Alliance of East Harlem v. Jackson*,
  430 F.3d 584 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*California v. Block*,
  690 F.2d 753 (9th 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Coal. on Sensible Transp., Inc. v. Dole*,
  826 F.2d 60 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Coliseum Square Ass'n, Inc. v. Jackson*,
  465 F.3d 215 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Decker v. U.S. Forest Serv.*, No. 09-cv-2675,
  2011 U.S. Dist. Lexis 11949 (D. Colo. Jan. 31, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*DOT v. Pub. Citizen*,
  541 U.S. 752 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Friends of the Atglen-Susquehanna Trail, Inc. v. Surface Transp. Board*,
  252 F.3d 246 (3rd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Grand Canyon Trust v. U.S. Bureau of Reclamation*,
  623 F. Supp. 2d 1015 (D. Ariz. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hells Canyon Alliance v. U.S. Forest Serv.*,
  227 F.3d 1170 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*High Sierr Hikers Ass'n v. Weingardt*, No. C-00-01239,
  2007 U.S. Dist. Lexis 84746 (N.D. Cal. Oct. 30, 1007) . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Lands Council v. McNair*,
  537 F.3d 981 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Marsh v. Or. Natural Res. Council*,
  490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-14

*Mid States Coal. for Progress v. Surface Transp. Bd.*,
  345 F.3d 520 (8th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*N. Idaho Cmty. Action Network v. DOT*,
  545 F.3d 1147 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Narragansett Indian Tribe v. Warwick Sewer Auth.*,
  334 F.3d 161 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nat'l Mining Ass'n v. Fowler*,
    324 F.3d 752 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rivera v. USPS*,
    830 F.2d 1037 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*San Carlos Apache Tribe v. United States*,
    417 F.3d 1091 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sierra Club v. Froehlke*,
    816 F.2d 205 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Silverton Snowmobile Club v. U.S. Forest Serv.*,
    433 F.3d 772 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Te-Moak Tribe of W. Shoshone v. U.S. Dep't of the Interior*,
    608 F.3d 592 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

*Valenti v. Mitchel*,
    962 F.2d 288 (3rd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Valley Cmty. Preserv. Comm'n v. Mineta*,
    373 F.3d 1078 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Vt. Yankee Nuclear Power Corp. v. NRDC*,
    435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Winter v. NRDC*,
    129 S. Ct. 365 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Woodford v. Ngo*,
    548 U.S. 81 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


<u>STATUTES</u>

5 U.S.C. §§ 701-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16 U.S.C. §§ 470 to 470x-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

16 U.S.C. §§ 6501 - 6542 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16 U.S.C. § 6515 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16 U.S.C. § 6515(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

16 U.S.C. § 6515(c)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. §§ 4321-4370h . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1

REGULATIONS

2  36 C.F.R. § 218.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

3  36 C.F.R. § 800.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4  36 C.F.R. § 800.4(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5  36 C.F.R. § 800.5(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6  36 C.F.R. § 800.9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7  36 C.F.R. § 800.9(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8  36 C.F.R. § 800.14(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9  36 C.F.R. § 800.14(b)(2)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10  36 C.F.R. § 800.16(l)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11  36 C.F.R. part 63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF ACRONYMS**

| | |
|---|---|
| ACHP | Advisory Council on Historic Preservation |
| APA | Administrative Procedure Act, 5 U.S.C. §§ 701-706 |
| AR | Administrative Record |
| DEIS | Draft Environmental Impact Statement |
| FEIS | Final Environmental Impact Statement |
| EIS | Environmental Impact Statement |
| HFRA | Healthy Forests Restoration Act, 16 U.S.C. §§ 6501-6542 |
| MOA | Memorandum of Agreement |
| NEPA | National Environmental Policy Act, 42 U.S.C. §§ 4321-4370h |
| NHPA | National Historic Preservation Act, 16 U.S.C. §§ 470 to 470x-6 |
| The OCFR Project or the Project | Orleans Community Fuels Reduction and Forest Health Project (the OCFR Project or the Project) |
| PA | Programmatic Agreement |
| The Panamnik District | Panamnik World Renewal Ceremonial District |
| The Partnership | Plaintiffs, the Orleans/Somes Bar Fire Safe Council, and the Northcoast Environmental Center |
| Pls.' Br. | Pls.' Mem. in Support of Mot. for Summ. J., Docket Number (Dkt.) 42. |
| Pls.' Reply | Pls.' Combined Reply in Support of Mot. for Summ. J. And Resp. to Defs.' Mot. for Summ. J., Dkt. 45. |
| The Regional PA | First Amended Programmatic Agreement Among the [Forest Service], [SHPO[, and [ACHP] |
| SHPO | California State Historical Preservation Office |
| Supplemental EIS or SEIS | Supplemental Environmental Impact Statement |
| TCP | Traditional Cultural Property |
| The Tribe | The Karuk Tribe |
| ROD | Record of Decision |

1                                    **INTRODUCTION**

2          Plaintiffs' arguments in opposition to Defendants' cross-motion for summary judgment

3   turn administrative law on its head.  The waiver doctrine requires a plaintiff to raise issues during

4   the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. §§ 4321-4370h, comment

5   period before attempting to assert such claims in federal court.  Likewise, the exhaustion doctrine

6   requires a plaintiff to raise issues in its administrative appeal before attempting to assert such

7   claims in federal court.  Plaintiffs attempt to circumvent these hurdles by arguing that they are

8   raising only post-implementation issues, but in reality they are also challenging actions taken by

9   the Forest Service before issuance of the Record of Decision (ROD), as well as aspects of the

10  Orleans Community Fuels Reduction and Forest Health Project (the OCFR Project or the Project),

11  as approved in the ROD.  *See* Defs' Br. in Support of Their Cross-Mot. for Summ. J. 12-13 (Defs.'

12  Br.) (identifying the pre-ROD and Post-ROD claims), Docket Number (Dkt.) 43.

13         In utilizing the First Amended Programmatic Agreement  (the Regional PA) for the Project,

14  the Forest Service complied with the requirements of the National Historic Preservation Act, 16

15  U.S.C. §§ 470 to 470x-6, prior to approval of the Project.  The Regional PA sets for the framework

16  for further proceedings during project implementation, and the Forest Service is currently

17  complying with Regional PA's provisions regarding inadvertent adverse effects, including

18  consulting with the California State Historic Preservation Office (SHPO) to develop a

19  memorandum of agreement pursuant to Stipulation V of the Regional PA.  The Forest Service has

20  also requested that the Karuk Tribe (the Tribe) participate in such consultation and become a

21  signatory to any memorandum of agreement.

22         The Forest Service intends the Project to reduce the Orleans Community's vulnerability to

23  wildfires, to encourage tree stand health, to encourage a more diverse mixture of tree species in the

24  area, to enable the Karuk Tribe to conduct its cultural burning, and to open five vistas to enhance

25  spiritual views  for the Karuk Tribe, among other objectives.  The Forest Service's analysis under

26  NEPA contemplated the environmental effects that have occurred during implementation, so

27  Plaintiffs have no viable argument that NEPA requires a supplemental EIS.  AR654.  Because

28  Plaintiffs' arguments are without merit, this Court should deny their motion for summary judgment

1    and grant the Forest Service's cross-motion for summary judgment.

2                                    **ARGUMENT**

3    **I.    Plaintiffs waived their pre-ROD issues when Plaintiffs did not make those comments**
     **during the review process, they failed to exhaust those issues in their HFRA objection,**
4    **and they abandoned their administrative remedies when they withdrew their objection.**

5            Plaintiffs argue that all of their claims arose during implementation.[1]  *See* Pls.' Reply 9-13

6    ("plaintiff is not bringing claims based on <u>pre-ROD</u> NHPA or NEPA compliance." (emphasis in

7    original)).  However, before the Forest Service signed the ROD, Plaintiffs had all of the

8    information they needed (a) to object to the Forest Service using the Regional PA, (b) to demand

9    the Forest Service update the Determination of Eligibility for the Panamnik District, and (c) to

10   ensure that the Draft EIS and FEIS required the contractor to use yoaders in Units 1 and 2.

11   "Because exhaustion requirements are designed to deal with parties who do not want to exhaust,

12   administrative law creates an incentive for these parties to do what they would otherwise prefer not

13   to do, namely, to give the agency a fair and full opportunity to adjudicate their claims."  *Woodford*

14   *v. Ngo*, 548 U.S. 81, 90 (2006).  The Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706,

15   and the Healthy Forests Restoration Act (HFRA), 16 U.S.C. §§ 6501-6542, prohibit Plaintiffs from

16   raising these issues in Court for the first time, as discussed below.  Under these statutes, if a

17   plaintiff does not raise an issue during the NEPA comment process, he waives the right to bring

18   that issue in federal court.  Similarly, under the HFRA, the exhaustion doctrine requires a plaintiff

19   to raise an issue during the objection process before raising it in court.  *See High Sierra Hikers*

20   *Ass'n v. Weingardt*, No. C-00-01239, 2007 U.S. Dist. Lexis 84746, at *6 (N.D. Cal. Oct. 30, 2007)

21   (requiring plaintiffs to have raised an issue "in their comments and in the administrative appeal" to

22   have preserved it for judicial review).  Plaintiffs failed to raise these three pre-ROD issues (1)

23   during the NEPA, comment period, (2) in their HFRA objection, and (3) by voluntarily

24   withdrawing their HFRA objection.  This Court should dismiss these three claims for that reason.

25   _____

26       [1]  In their reply, Plaintiffs abandon their arguments that the Forest Service failed to consider the
     effects of the Project on the Panamnik District before issuing the ROD, that the Forest Service failed
27   to analyze the environmental effects of the Project, and that the Project fails to meet its purpose and
     need.  *Compare* Pls.' Mem. in Support of Mot. for Summ. J. (Pls.' Br.) 14-15, 17, 21-22, Dkt. 42,
28   *with*  Pls.' Combined Reply in Support of Mot. for Summ. J. And Resp. to Defs.' Mot. for Summ. J.
     (Pls.' Reply), Dkt. 45.

1    *Cf. Valenti v. Mitchel*, 962 F.2d 288, 299 (3rd Cir. 1992) ("equity aids the vigilant, not those who

2    rest on their rights." (quotations omitted)).

3          A.    <u>Plaintiffs waived these three claims by not raising them in their comments.</u>

4          Plaintiffs have waived their right to present these three claims.  Plaintiffs point to the

5    comments they did provide and argue that "plaintiffs repeatedly presented their concerns about

6    what <u>could</u> happen . . . ."  Pls.' Reply 1-2.  Notwithstanding Plaintiffs protestations to the contrary,

7    those comments did not raise the Pre-ROD issues they have argued in this lawsuit.  Parties waive

8    judicial review of issues that are distinct from the issues they raised in their comments.  *Silverton*

9    *Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 784 (10th Cir. 2006).  The HFRA and the

10   APA prohibit this Court from giving them yet another chance.  Defs.' Br. 12-16.

11         First, Plaintiffs argue that the Forest Service could not use the Regional PA to comply with

12   the NHPA because it did not cover traditional cultural properties (TCPs)  like the Panamnik

13   District.  Pls.' Br. 9.  The Regional PA requires the Forest Service to use the NEPA process to

14   provide information to the public and solicit public comment regarding historic resources, and that

15   information was available in the DEIS.  AR5523; AR5493; AR5503.  The Forest Service stated in

16   the DEIS that "[i]n protecting cultural resources within the project [area of potential effect] the

17   Region[al PA] has recommended specific protective measures."  AR1007.  If Plaintiffs saw a

18   "fatal flaw" in the use of the Regional PA, they could have and should  have raised it in their

19   comments on the Draft EIS.  Pls.' Reply 9.  Plaintiffs point to no NEPA comment raising this

20   argument, so they waived it.  *DOT v. Pub. Citizen*, 541 U.S. 752, 764-65 (2004); *Grand Canyon*

21   *Trust v. U.S. Bureau of Reclamation*, 623 F. Supp. 2d 1015, 1030 (D. Ariz. 2009) ("The [plaintiff]

22   failed to raise this issue in its comment on the draft Environmental Assessment.  The argument

23   therefore is waived." (citation omitted)).

24         Second, Plaintiffs knew the Forest Service had not updated the Determination of Eligibility

25   for the Panamnik District.  The Determination of Eligibility Determination was signed on April 3,

26   1978.  AR4049.  The Forest Service signed the ROD on August 15, 2008.  AR949.  The first time

27   the Tribe requested the Forest Service to update the Determination of Eligibility was several

28   months later, on January 22, 2010.  AR5090.  Plaintiffs could have made this request following the

issuance of the DEIS , but did not, which waived that argument.  *DOT*; *Grand Danyon Trust*.

Third, the Draft EIS did not require the contractor to use yoaders in Units 1 and 2, and that information was available to Plaintiffs.  DEIS App. C, AR1150-1165 (describing design features and FEIS App. C, AR863-78 (same).  Indeed, the DEIS and FEIS both described Units 1 and 2 as "skyline" units.  AR1122, 1134 (DEIS); AR834, 847 (FEIS).  16 U.S.C. § 6515(c)(3)(B) does not excuse Plaintiffs from their responsibility to raise the issues that are important to them at the appropriate times when, like here, the information is available.  The HFRA regulations make this waiver doctrine explicit: "any filing for Federal judicial review of an authorized hazardous fuel reduction project is premature and inappropriate unless the plaintiff has submitted specific written comments relating to the proposed action during scoping or other opportunity for public comment as prescribed by the HFRA."  36 C.F.R. § 218.14.  Plaintiffs waived these three arguments.  *Id.*

Plaintiffs rely on the HFRA regulation and statute that allows plaintiffs to raise claims in court for the first time "'in exceptional circumstances such as where significant new information bearing on a specific claim only becomes available after conclusion of the administrative review.'"  Pls.' Reply 12-13 (quoting 36 C.F.R. § 218.14 and citing 16 U.S.C. § 6515(c)(3)(B)).  Plaintiffs claim that the implementation of the Project "not . . . in accordance with the ROD and FEIS" is "significant new information" that satisfies the "exceptional circumstances" requirement.  Pls.' Reply 13.  Plaintiffs' interpretation, however, would create a loophole wide enough to drive a truck through it.  That exception is actually very narrow, and Plaintiffs point to no new information on these three claims that would satisfy the "exceptional circumstances" requirement.  If plaintiffs could bootstrap all of their waived arguments back into this litigation simply because implementation began, they could automatically open up a plethora of claims they could have and should have raised during the administrative process (as Plaintiffs are attempting here). That reading, however, would controvert the purpose of the HFRA.   Instead of expanding a plaintiff's ability to raise new issues, Congress intended the HFRA to narrow the issues, so that projects could move forward more expediently.  *See* 16 U.S.C. § 6515(c)(2) (allowing "[a]n issue [to] be considered in the judicial review of an action . . . only if the issue was raised in [the] administrative review process.").  For these pre-ROD claims, the material information was available and not

1    "new."  Plaintiffs waived these three claims, and this Court should dismiss them.

2        B.    Plaintiff failed to exhaust these three claims.

3        Plaintiffs are also barred from making these three arguments in this Court because they

4    failed to exhaust their administrative remedies under the HFRA statute and regulations, which

5    contain their own objection process.  36 C.F.R. 218.14 ("judicial review . . . is strictly limited to

6    those issues raised by the plaintiff's submission during the objection process"); 16 U.S.C. § 6515

7    ("Special Administrative Review Process").  Plaintiffs filed an objection, but that objection did not

8    raise these three claims.  AR622.  It did not mention the Regional PA, the Determination of

9    Eligibility for the Panamnik District, or the Draft EIS and FEIS requirement that the contractor use

10   yoaders in Units 1 and 2.  *Id.*  The Karuk Tribe's Eco-Cultural Restoration Specialist, William

11   Tripp, admitted that he and the Tribe should have raised the yoader issue in their HFRA objection:

12           After looking into the Decision it appears that the Yoder [sic] equipment
             requirement that was discussed during consultation didn't make its way into the
13           FEIS.  I understand that it is on the stand cards but somehow got missed in the
             document.  Those of us that were involved in the consultation process were pretty
14           busy with the fires during the objection process but who is to say we would have
             even caught it then.  Just another learning thing I guess.
15
16   AR4795; Standing Decl. of William Tripp ¶ 2, Dkt. 27.[2]  "[U]nder HFRA, the Court may only

17   consider an issue 'if the issue was raised in [the] administrative review process.'"  *Decker v. U.S.*

18   *Forest Serv.*, No. 09-cv-2675, 2011 U.S. Dist. LEXIS 11949, *14 (D. Colo. Jan. 31, 2011)

19   (quoting 16 U.S.C. § 6515(c)(2)); 36 C.F.R. § 218.14.  Plaintiffs did not.  They failed to exhaust

20   these three claims.  Defs.' Br. 15-16.

21

22   _____

         [2]  Plaintiffs argue that "[t]he government could have advised the plaintiffs it intended not to
23   incorporate into the contract the [yoader requirement] in the EIS which were developed over the
     years through the collaboration process."  Pls.' Reply 13.  Plaintiffs' attempt to shift the burden of
24   raising their claims to the Forest Service's attention has no basis in law.  Instead, it is well settled
     that "it is . . . incumbent upon [those] who wish to participate [in the administrative process] to
25   structure their participation so that it is meaningful, so that it alerts the agency to the [participants']
     position and contentions."  *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 553 (1978).
26   The HFRA regulations codify that requirement:  "[i]ndividuals and groups must structure their
     participation so as to alert the local agency officials making particular land management decisions of
27   their positions and contentions."  36 C.F.R. § 218.14.  Plaintiffs clearly had the responsibility to
     raise their claims, during their comments and in their HFRA objection, that the Draft EIS and FEIS
28   did not satisfy NEPA requirements because they had failed to specify the equipment for harvesting
     in Units 1 and 2.

1    C.    <u>Plaintiffs abandoned their claims by withdrawing their objection.</u>

2    Ultimately, Plaintiffs failed to exhaust all of their administrative remedies for all of their

3    claims they could have raised during the administrative process.  When they stated, "[w]e are

4    withdrawing our objection" under the HFRA, they abandoned their right to any further

5    administrative remedies.  AR644.  Contrary to their arguments, Plaintiffs cannot reserve some

6    issues to raise later.  Pls.' Reply 1.  In an analogous context, the Ninth Circuit has stated, "[t]o

7    withdraw is to abandon one's claim, to fail to exhaust one's remedies."  *Rivera v. USPS*, 830 F.2d

8    1037, 1039 (9th Cir. 1987).  When Plaintiffs withdrew their HFRA objection, they voluntarily

9    declined to pursue their administrative remedies, and failed to exhaust those remedies for every

10   issue they could have raised before the Forest Service issued the ROD.  *See id.*  Plaintiffs waived

11   and failed to exhaust their Pre-ROD NEPA and NHPA claims, so this Court should dismiss those

12   claims.

13   **II.    The Forest Service Complied with Requirements of the NHPA.**

14   The Ninth Circuit and multiple other Circuits have found that Section 106 of the NHPA,

15   like NEPA, is chiefly procedural in nature and does not dictate outcomes.[3]  As the Ninth Circuit

16   has repeatedly stated, Section 106 is a "stop, look, and listen" provision.  *See, e.g., Te-Moak Tribe*

17   *of W. Shoshone*, 608 F.3d at 607 and 610; *San Carlos Apache Tribe*, 417 F.3d at 1097;  *see also*

18   *Narragansett Indian Tribe v. Warwick Sewer Authority*, 334 F.3d  at 166-67;  *Friends of the*

19   *Atglen-Susquehanna Trail*, 252 F.3d at 263; 36 C.F.R. § 800.1 (detailing the purpose and goals of

20   the Section 106 consultation process).  Plaintiffs provide no caselaw to the contrary and the

21   regulations they attempt to rely upon stand only for the proposition that an agency must comply

22   with certain procedural requirements during the consultation process.  *See* Pls.' Reply 6 (citing 36

23

24   _____

25   [3]  *See, e.g., Te-Moak Tribe of W. Shoshone v. U.S. Dep't of the Interior*, 608 F.3d 592, 610 (9th
     Cir. 2010); *N. Idaho Cmty. Action Network v. DOT*, 545 F.3d 1147, 1158 (9th Cir. 2008); *San*
26   *Carlos Apache Tribe v. United States*, 417 F.3d 1091, 1097 (9th Cir. 2005); *Coliseum Square Ass'n,*
     *Inc. v. Jackson,* 465 F.3d 215, 224 (5th Cir. 2006); *Bus. and Residents Alliance of East Harlem v.*
27   *Jackson*, 430 F.3d 584, 590-91 (2nd Cir. 2005); *Valley Cmty. Preserv. Comm'n v. Mineta*, 373 F.3d
     1078, 1085 (10th Cir. 2004); *Narragansett Indian Tribe v. Warwick Sewer Auth.*, 334 F.3d 161, 166-
28   67 (1st Cir. 2003); *Nat'l Mining Ass'n v. Fowler*, 324 F.3d 752, 755 (D.C. Cir. 2003); *Friends of the*
     *Atglen-Susquehanna Trail, Inc. v. Surface Transp. Board*, 252 F.3d 246, 263 (3rd Cir. 2001).

1    C.F.R. §§ 800.5(c), 800.9(b) and 800.9(c)).[4]

2        A.    The Forest Service complied with the NHPA by utilizing the Regional PA.

3        Rather than addressing the Forest Service's discussion regarding its compliance with the

4    NHPA, Plaintiffs first spend several pages explaining why their NHPA claims are not moot. *See*

5    Pls.' Reply 6-9.  It appears that Plaintiffs took the Forest Service's discussion of how it is

6    complying with Stipulation V of the Regional PA regarding inadvertent effects from Project

7    implementation and then jumped to the conclusion that the Forest Service argues that their suit is

8    moot. *See id.* at 6.  That is simply not the case; indeed nowhere in Defendants' brief does the word

9    "moot" appear.  The Forest Service made no such argument by inference or implication.

10   Plaintiffs' strawman argument about mootness therefore should be disregarded by the Court.

11       Instead, it should be recognized that the Forest Service fully complied with the

12   requirements of the NHPA through the use of the Regional PA for the Project.  As previously

13   explained, the NHPA expressly allows for the use of programmatic agreements such as the

14   Regional PA in lieu of following the Section 106 procedures, and the decision to utilize it for the

15   Project was neither arbitrary nor capricious.  *See* 36 C.F.R. § 800.14(b); Defs.' Br. 17-19.  The

16   plain language of the Regional PA shows it could be used for projects that involve potential

17   impacts to TCPs, which are a type of historic property, as defined under the Section 106

18   regulations at 36 C.F.R. § 800.16(l)(1).  *See* Defs.' Br. 17-18; *see also* AR5494.  Plaintiffs attempt

19   to argue, with absolutely no support, that the Regional PA could not be used for this Project

20   because the cultural areas (presumably referring to the Panamnik District) are currently in use and

21   the Regional PA was only intended to apply to archaeological and historical sites, and not to

22   "living sites."[5]  Pls.' Reply 11.  TCPs, however, by their definition, include areas currently in use.

23   As recognized by the Ninth Circuit, a TCP "is a term used by the National Park Service to refer to

24   'properties of traditional religious and cultural importance' that may be eligible for listing on the

25   national register . . . ."  *Te-Moak Tribe of W. Shoshone*, 608 F.3d at 608, n.16 (citing National Park

26

27   ────────────────
         [4] Plaintiffs also attempt to rely on 36 C.F.R. § 800.8(e), which does not exist.

28       [5] Plaintiffs previously asserted the Regional PA covers only archeological sites. Pls.' Mem. at 15.

     DEFS.' REPLY BR. IN SUPPORT OF CROSS-MOT. FOR SUMM. J.
     Karuk Tribe v. Kelley, No. 3:10-cv-2039-WHA                                    -7-

1    Service National Register Bulletin 38, *available at*

2    www.nps.gov/nr/publications/bulletins/pdfs/nrb38.pdf).  National Register Bulletin 38 includes as

3    an example of a TCP "a location where Native American religious practitioners have historically

4    gone, *and are known or thought to go to today*, to perform ceremonial activities in accordance with

5    traditional cultural rules of practice."  *Id.* at 1 (emphasis added).  It also states that a TCP "can be

6    defined generally as one that is eligible for inclusion in the National Register because of its

7    association with cultural practices or beliefs of a *living community*."  *See id.* (emphasis added).

8    Therefore, Plaintiffs' argument that because the Panamnik District is currently in use, it cannot fall

9    under the definition of a historic property in the Regional PA is simply incorrect.

10           The Forest Service made clear through the NEPA review process that it intended to use the

11    Regional PA to comply with the NHPA.  *See* Defs.' Br. 17-18 (citing AR704-705; AR872-73).

12    Plaintiffs do not disagree with the discussion of how the Tribe's views were solicited by the Forest

13    Service, the multiple meetings in which the Tribe participated prior to Project approval or the

14    response to their comments in the FEIS, all of which satisfied the Regional PA's requirement to

15    solicit comments through the NEPA process.[6]  *See* AR5503; Defs.' Br. 19-20.  Although in May

16    2010, the SHPO questioned the application of the Regional PA to the Project because of the

17    existence of TCPs, as outlined in a Forest Service email, this did not occur until more than six

18    months after Project implementation and a year and half after Project approval.  AR5394; AR 948-

19    49; AR5624.  In December 2010, the Regional Forester directed that while the Regional PA should

20    not be used in the future for projects with TCPs, it would still apply to all projects approved prior

21    to June 4, 2010, which includes this Project.  *See* Defs.' Br. 18, n.8 (citing AR6019; AR5618-19).

22    This was because the directive was not "intended to revisit or re-open any decisions made prior to

23    June 4, 2010 to approve a project."[7]  *See id.*

24           Prior to this directive, the Forest Service consulted with the SHPO pursuant to the Regional

25    

26      [6] Regarding Plaintiffs' claims that the Forest Service did not consult with SHPO prior to the
ROD, the Regional PA states that such consultation is not necessary where, as here, effective
27    protection measures are employed following an intensive inventory.  *See* Defs.' Br. 20.

28      [7] This is the "new direction" by the Forest Service referred to in the May 21, 2010, email
referenced by Plaintiffs.  *See* Pls.' Reply 9, citing AR5394.

DEFS.' REPLY BR. IN SUPPORT OF CROSS-MOT. FOR SUMM. J.
Karuk Tribe v. Kelley, No. 3:10-cv-2039-WHA                                           -8-

1   PA regarding inadvertent adverse effects as a result of Project implementation.  *See* Defs.' Br. 18-

2   19 (detailing consultation between the Forest Service and the SHPO under the Regional PA for the

3   Project).   Following this directive, the SHPO continued to consult with the Forest Service under

4   the Regional PA regarding those effects, as detailed in the SHPO's March 3, 2011, letter to the

5   Forest Service stating "you have initiated consultation pursuant to *Stipulation V of the* [*Regional*

6   *PA*] . . . ."  *See* Burcell Decl., Ex. 1 (emphasis added), Dkt. 43-3. The SHPO also proposed

7   memorializing mitigation measures to address inadvertent adverse effects in a memorandum of

8   agreement and to invite the Tribe to be a consulting party in its development and a full signatory to

9   it, while recognizing that if such a memorandum of agreement cannot be developed, "the provision

10  for requesting the Advisory Council on Historic Preservation comments *as provided in stipulation*

11  *V of the Regional PA will be followed*."  *Id.* (emphasis added).  Despite attaching this letter to their

12  brief, Plaintiffs choose to simply ignore this, and other actions by the SHPO, which show that the

13  Regional PA was utilized for the Project, and that the SHPO was, and is, well aware of that fact.[8]

14       Plaintiffs appear to misunderstand the arguments made by the Forest Service, as evidenced

15  by their erroneous statement that the Forest Service appears to argue that the courts have no

16  authority to weigh in on whether the use of the Regional PA was in violation of the NHPA.  *See*

17  Pls.' Br. 9.  This lawsuit gives the Court the opportunity to determine whether the agency's actions

18  were arbitrary and capricious.  The administrative record shows, however, that the Forest Service's

19  decision to utilize the Regional PA was neither arbitrary nor capricious.[9]  *See* 36 C.F.R.

20  §800.14(b)(2)(iii).  This Court should also find that the Forest Service is complying with the

21  requirements of the Regional PA in dealing with the inadvertent adverse effects  from Project

22  implementation.

23

24

25  [8] On March 23, 2011, the Forest Service sent a letter to the Tribe requesting government to government consultation to determine whether the Tribe would be a party in developing and executing a memorandum of agreement.  *See* Burcell Decl., Ex. 2, Dkt. 43-4.  Following that, the

26  Forest Supervisor met with the Chair of the Tribe and inquired about the Tribe's response.  *See* Decl. of Kelley, ¶ 5, Ex. TK-1.  On April 27, 2011, the Tribe responded in writing to this request.  The

27  Tribe and Forest Service have sent a tentative meeting date in July.  *See id.*; Ex. TK-2.

28  [9] Because the Forest Service did not violate the NHPA, it was completely within its authority to offer timber contracts following issuance of the ROD for the Project.

DEFS.' REPLY BR. IN SUPPORT OF CROSS-MOT. FOR SUMM. J.
Karuk Tribe v. Kelley, No. 3:10-cv-2039-WHA                              -9-

1

2

    B.    <u>The Forest Service was not required to update the Determination of Eligibility for the Panamnik District prior to approving the Project.</u>

3

4

    Plaintiffs misconstrue the Section 106 regulations when they argue that the Forest Service "conveniently ignored the initial section" of 36 C.F.R. § 800.4(c)(1).[10] *See* Pls.' Reply 11-12. The

5

6

only mandatory language contained within 36 C.F.R. § 800.4(c)(1) applies to properties "that have not been previously evaluated," which is clearly not the case here. In contrast, for property that

7

8

has previously been evaluated, such as the Panamnik District, the regulations states only that:

> The passage of time, changing perceptions of significance, or incomplete prior evaluations *may* require the agency official to reevaluate properties previously determined eligible or ineligible.

9

10

36 C.F.R. § 800.4(c)(1) (emphasis added). Plaintiffs do not dispute that the Panamnik District is a

11

previously evaluated property, and therefore on its face, 36 C.F.R. § 800.4(c)(1) does *not* require

12

that the Determination of Eligibility to be updated prior to approval of the Project, as argued by

13

Plaintiffs. Plaintiffs point to *Friends of the Atglen-Susquehanna Trail*, which does not advance

14

their cause. In that case, the agency: (1) ignored the recommendation of the Keeper of the

15

National Register of Historic Places, which has independent authority to determine whether a

16

property should be listed in the National Register, that a property was so eligible; (2) the SHPO

17

had changed its position regarding what portion of the property was eligible; and (3), most

18

importantly, there was no existing Determination of Eligibility to update. 252 F.3d at 263-266.

19

None of these factors are present here.

20

    Additionally, as previously discussed, the Forest Service used information provided by the

21

Tribe regarding the Panamnik District when considering potential impacts of the Project. *See*

22

23

[10] That regulation provides:

24

25

26

27

> In consultation with the SHPO/THPO and any Indian tribe or Native Hawaiian organization that attaches religious and cultural significance to identified properties and guided by the Secretary's Standards and Guidelines for Evaluation, the agency official shall apply the National Register criteria (36 CFR part 63) to properties identified within the area of potential effects that have not been previously evaluated for National Register eligibility. The passage of time, changing perceptions of significance, or incomplete prior evaluations may require the agency official to reevaluate properties previously determined eligible or ineligible.

28

36 C.F.R. § 800.4(c)(1).

1   Defs.' Br. 23-24. Plaintiffs do not appear to dispute this.  Finally, the Forest Service intends to

2   complete an update of the Determination of Eligibility for the Panamnik District based on a

3   recommendation of the Heritage Program Manager.  *See id.* at 24.

4       As the Forest Service has complied with the requirements of the Regional PA and the

5   NHPA, this Court should grant the Forest Service's cross-motion for summary judgment and deny

6   Plaintiffs' motion for summary judgment on the NHPA claims.

7   **III.    Plaintiffs have not identified any new information that required the Forest Service to
             develop a supplemental EIS.**

8

9       NEPA requires the Forest Service to complete a supplemental environmental impact

10  statement (EIS) only if (1) "there remains 'major Federal actio[n]' to occur," and (2) there is "new

11  information" (3) that "show[s] that the remaining action will 'affec[t] the quality of the human

12  environment' in a significant manner or to a significant extent not already considered."  *Marsh v.*

13  *Or. Natural Res. Council*, 490 U.S. 360, 374 (1989).  Even if Plaintiffs had identified some

14  environmental effects outside the contemplated effects of the OCFR Project, which they did not,

15  they do not pass that significance threshold.  *Vt. Yankee*, 435 U.S. at 553 (1978) ("comments must

16  be significant enough to step over a threshold requirement of materiality before any lack of agency

17  response or consideration becomes of concern.").  Because Plaintiffs failed to carry their burden,

18  this Court should deny Plaintiffs' motion for summary judgment and grant the Forest Service's

19  cross-motion on this claim.

20      The Argument section of Plaintiffs' reply contains only one claim related to a supplemental

21  NEPA analysis.  Pls.' Reply 15.[11]  Drawing on their facts section, Plaintiffs argue that the 70

22  pieces of yarded unmerchantable material left in Units 1 and 2 either increase fire damage or

23  harms cultural sites, that the FEIS did not analyze them, and that they cause a significant effect on

24  the environment.  Pls.' Reply 5, 15; AR4542.  Plaintiffs claim in reply that the Forest Service used

25  "vague, conclusory analysis" instead of describing "the specific outline of the project . . . to the

26

27      [11]  Plaintiffs cite and describe a litany of cases in support of their argument that NEPA required a
        supplemental EIS.  Plaintiffs, however, fail to explain how those cases apply to this situation.  Pls.'
28  Reply 13-14.  They are inapposite because, here, the effects of the Project were within the NEPA
        analysis.

public and [addressing] all impacts . . . ."  Pls.' Reply 15 (emphasis in original).[12]

    To satisfy its obligations under NEPA and the APA, the Forest Service need only "cogently explain why it has exercised its discretion in a given manner . . . ."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983); *cf. Mid States Coal. for Progress v. Surface Transp. Bd.*, 345 F.3d 520, 535 (8th Cir. 2003) ("In considering whether the EIS adequately sets forth sufficient information to allow the decision-maker to make a reasoned decision, we are guided by the rule of reason." (quotations and alteration omitted)).  In other words, NEPA does not require the Forest Service to identify every tree it will remove or every location from which it will remove downed material.  The Forest Service recognized that "removal of encroaching and possibly damaging vegetation" could benefit some cultural sites, but could leave other sites "visible and more exposed to vandalism."  AR703.  Therefore, when confronted with such situations, the FEIS allows the Forest Service to make "[s]ome site-specific decisions . . . regarding site protection during and after fuel removal."  AR703; Defs.' Br. 27.  The Forest Service chose to leave temporarily those 70 pieces of material because, it concluded, "yarding of this material may cause resource damage."  AR4542.  Leaving that material was within the scope of the FEIS, so NEPA required no supplemental EIS.  *Marsh*, 490 U.S. at 374; *Motor Vehicle Mfrs.*; *Mid States Coal.*; *Hells Canyon Alliance v. U.S. Forest Serv.*, 227 F.3d 1170, 1177 (9th Cir. 2000) ("[courts] . . . must simply ensure that the agency has adequately considered and disclosed the environmental impact of its actions").

    In their "Correction of Factual Background" section, Plaintiffs make various NEPA arguments.  They argue that the Forest Service made "[m]aterial[] change[s] . . . to the EIS [a]nalysis," because the Forest Service created corridors that exceeded the size of corridors that the FEIS allowed.  Pls.' Reply 4.  These facts are wrong, and even if they were true, Plaintiffs have not demonstrated that those facts would present a "seriously different picture of the environmental impact" of the Project.  *Sierra Club v. Froehlke*, 816 F.2d 205, 210 (5th Cir. 1987).  The FEIS

---

[12]  *California v. Block*, 690 F.2d 753, 771 (9th 1982), is inapposite because, there, the Ninth Circuit was addressing a situation in which "the Proposed Action differ[ed] radically from the alternatives mentioned in a draft EIS."  Here, the proposed action in the ROD was the exact alternative proposed in the FEIS–modified slightly to accommodate Plaintiffs' requests.  AR944.

1    allowed corridors up to ten feet wide, and the Forest Service had "marked an 8-foot wide

2    corridor." Defs.' Br. 25 (quoting AR4866, AR847). Plaintiffs have not adduced any new

3    information. During a November 24, 2009, meeting, Plaintiffs commented that "Harold Tripp

4    estimated the skyline corridors to be 20-40 foot wide on average.," and the Forest Service

5    responded that it had "marked an 8-foot wide corridor," which was within the scope of the FEIS.

6    AR4866; AR847. Plaintiffs found a statement in a later, December 22, 2010, letter to the Forest

7    Service, which they claim shows the *implemented* corridor width was wider than the *marked*

8    corridor width. Pls.' Reply 4 (citing AR5406). That letter uses the same phrasing from the

9    meeting minutes, but changes one number: "Harold Tripp estimated the skyline corridors to be 20-

10   30 feet wide on average." *Compare* AR4866 *with* AR5406. It does not establish any new

11   information. The deference that courts owe to agencies extends to agency determinations whether

12   new information is significant and requires a supplemental EIS. *Marsh*, 490 U.S. at 374, 377;

13   *Lands Council v. McNair*, 537 F.3d 981, 1000 (9th Cir. 2008) (en banc) (citation and quotations

14   omitted), *overruled on other grounds by Winter v. NRDC*, 129 S. Ct. 365, 374 (2008); *Coal. on*

15   *Sensible Transp., Inc. v. Dole*, 826 F.2d 60, 66 (D.C. Cir. 1987) ("the NEPA process involves an

16   almost endless series of judgment calls. . . . The line-drawing decisions necessitated by this fact of

17   life are vested in the agencies, not the courts."). NEPA requires no supplemental EIS here.

18       Based on January 2010 photographs that are not in the administrative record, Plaintiffs

19   claim that "[n]umerous large 'add-on' trees were logged . . . ." Pls.' Reply 4. The pictures are

20   simply not appropriate for judicial review.[13] Although Plaintiffs generally argue that "the impacts

---

22       [13] Plaintiffs raised this information late, so this Court should not consider the photos. *See Bastek*
     *v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2nd Cir. 1998) ("Exhaustion also allows the agency to
23   develop the factual record of the case, which aids such judicial review as may be available."). There
     is no evidence the Forest Service saw these photos before Plaintiffs' reply, and if Plaintiffs
24   possessed these photos in January 2010 and wanted to use them, they should have requested the
     Forest Service to include them in the Administrative Record by the jointly proposed October 18,
25   2010, court-ordered deadline; they did not. Case Mgmt. Order (entering the proposed order), Dkt.
     23; Parties' [Proposed] Order ("By this date, Plaintiffs must raise, informally with the Defendants
26   any and all issues relating to the administrative record."), Dkt. 21. Plaintiffs could also have moved
     for their admission in their motion to complete the administrative record, but, again, they did not.
27   Case Mgmt. Order; [Proposed] Order ("By [November 15, 2010], Plaintiffs must file any and all
     motions relating to the sufficiency of the administrative record."); Pls.' Mot. to Complete the
28   Admin. Record (declining to refer to the photos or to attach as one of its seven exhibits), Dkt. 33.
     This Court should not consider those late-provided photos.

1    are not minor," that is not the standard for requiring a supplemental EIS. Pls.' Reply 4. NEPA

2    requires a supplemental EIS here only if new information "show[s] that the remaining action will

3    'affec[t] the quality of the human environment' in a *significant manner* or to a *significant extent*

4    not already considered." *Marsh*, 490 U.S. at 374 (emphases added). The FEIS for the Project

5    allows the Forest Service to designate "additional trees . . . for removal because: . . . they are

6    designated as hazard trees along certain roadways . . . ." AR847. The FEIS expected "add-on

7    volumes generally [to] range from 5 to 25 percent of the original unit volume . . . ." *Id.* In that

8    unit, the Forest Service "marked 6 [douglas fir] Hazard trees." AR4545 (showing landing, corridor

9    layout, and road). The pictures do not establish a different situation. Because removing the six

10   douglas fir hazard trees was within the scope of the FEIS, NEPA did not require the Forest Service

11   to supplement its FEIS. *Marsh*, 490 U.S. at 374.

12        Plaintiffs argue that the OCFR Project required the Forest Service to "'[m]aintain a healthy

13   hardwood component well into the future.'" Pls.' Reply 5 (quoting AR668). They claim that

14   "defendant left in the contract the financial incentive for removing hardwoods," but even if true,

15   that does not establish any NEPA violation. *Id.* (citing Pls.' Mem. in Support of Mot. for Summ. J.

16   (Pls.' Br.) 19, Dkt. 42). The Project anticipated the impact on hardwoods would exceed the "25

17   percent loss of hardwood trees between 6 and 20 inches [diameter at breast height]." AR717-18;

18   Defs.' Br. 26. Plaintiffs have not shown how any particular contract provision would prevent the

19   OCFR Project from complying with the FEIS's mandate to "[m]aintain a healthy hardwood

20   component well into the future." AR668. Plaintiffs failed to demonstrate that NEPA required the

21   Forest Service to supplement the FEIS. *Marsh*, 490 U.S. at 374.

22        In a last-ditch effort to establish that the Project exceeds the scope of the FEIS and NEPA

23   requires a supplemental EIS, Plaintiffs quote one sentence from one email for the proposition that

24   the unit boundaries on the map do not match the unit boundaries on the stand cards. Pls.' Reply 5-

25   6 (quoting AR5035). Plaintiffs have not identified any unit whose boundaries do not match the

26   stand cards. The author of that email must be mistaken because the unit card maps match the FEIS

27   exactly. *Compare* AR826 *with* AR4518 (Unit 1); *compare* AR826 *with* AR4520 (Unit 2);

28   *compare* AR826 *with* AR4521 (Unit 51); *compare* AR825 *with* AR4524 (Unit 195). The Project

1    boundaries are within the scope of the FEIS, so NEPA does not require a supplemental EIS.

2    *Marsh*, 490 U.S. at 374.  Plaintiffs have identified no effects that exceeded the scope of the NEPA

3    process, much less any significant effects.  The Court should deny Plaintiffs' motion for summary

4    judgment and grant the Forest Service's cross-motion.

5                                    **CONCLUSION**

6          Plaintiffs are trying to resurrect a host of waived and inadequately exhausted claims, but

7    the HFRA and the APA prohibit raising them for the first time in court.  Further, even if this Court

8    were to consider such claims, Plaintiffs' arguments fail on their merits.  The Forest Service has

9    shown that it complied with the NHPA, NEPA, the HFRA, and the APA.  This Court should

10   therefore deny Plaintiffs' motion for summary judgment and grant the Forest Service's cross-

11   motion for summary judgment.

12         Respectfully submitted, May 20, 2011.

13

14                                              IGNACIA S. MORENO
                                                Assistant Attorney General

15

16                                                  */s/ Jared S. Pettinato*
                                                JARED S. PETTINATO
17                                              SAMANTHA KLEIN FRANK
                                                Trial Attorneys
18                                              United States Department of Justice
                                                Environment and Natural Resources Division
                                                Natural Resources Section
19                                              P.O. Box 663
                                                Washington, D.C.  20044-0663
20                                              Tel: (202) 305-0203 (Pettinato)
                                                Tel: (202) 305-0474 (Klein)
21                                              Fax: (202) 353-0274
                                                Jared.Pettinato@usdoj.gov
22                                              Samantha.Frank@usdoj.gov

23                                              *Attorneys for the Federal Defendants*

24

25                                              OF COUNSEL:

26                                              ROSE MIKSOVSKY
                                                U.S. Department of Agriculture
27                                              Office of the General Counsel
                                                33 New Montgomery St., 17th Floor
28                                              San Francisco, California  94105

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that I have caused the foregoing to be served upon counsel of record

3   through the Court's electronic service system (ECF/CM):

4          Sharon Duggan at foxsduggan@aol.com

5          Marianne Dugan at mdugan@mdugan.com

6   Dated May 20, 2011.

7

8                                          ___/s/ Jared S. Pettinato_____
                                           JARED S. PETTINATO
9                                          Trial Attorney
                                           United States Department of Justice
10                                         Environment and Natural Resources Division
                                           Natural Resources Section
11                                         P.O. Box 663
                                           Washington, D.C.  20044-0663
12                                         Tel: (202) 305-0203 (Pettinato)
                                           Fax: (202) 353-0274
13                                         Jared.Pettinato@usdoj.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' REPLY BR. IN SUPPORT OF CROSS-MOT. FOR SUMM. J.
Karuk Tribe v. Kelley, No. 3:10-cv-2039-WHA                                    -16-